**Affirmed in Part, and Reversed and Remanded in Part and Majority and Dissenting Memorandum Opinions filed March 30, 2023**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00765-CV

---

### ZHAOHONG WU AND YANJING ZHOU, INDIVIDUALLY AND AS NEXT FRIENDS OF K. W. AND E. W., THEIR MINOR CHILDREN, Appellants

### V.

### LUMBER LIQUIDATORS, INC. AND WOOD FLOOR ARTISANS, A GENERAL PARTNERSHIP COMPOSED OF VICTOR MARTINEZ-MEDINA, INDIVIDUALLY, AND AMBER LEE MARTINEZ, INDIVIDUALLY, Appellees

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-08354**

---

## MAJORITY MEMORANDUM OPINION

Appellants, Zhaohong Wu and Yanjing Wu, individually and as next of friends of K.W. and E.W., their minor children, appeal the trial court's summary judgment dismissing their claims with prejudice. In two issues appellants contend

the trial court abused its discretion in excluding their experts and erred in rendering summary judgment. We affirm in part and reverse and remand in part.

## BACKGROUND

Appellants purchased wood flooring and installation services from appellee Lumber Liquidators, Inc. Lumber Liquidators hired a subcontractor, appellee Wood Floor Artisans,[1] to install the flooring. Issues arose with the floors within a few weeks after installation. Appellants observed cupping and buckling of the new wood floors and contacted Lumber Liquidators. Lumber Liquidators had two companies inspect the flooring to determine the cause of the buckling and cupping. Both companies concluded that Wood Flooring Artisans had not installed the flooring properly.

Appellants filed suit against appellees[2] asserting claims for negligence, negligent hiring, breach of contract, breach of warranty, and claims under the Deceptive Trade Practices Act (DTPA). Appellants alleged that the improper installation allowed "toxic mold" to come into their home resulting in respiratory issues and permanent brain damage. Appellants also claimed property damage to their home including replacement of the flooring and mold remediation throughout the home.

Appellees filed a motion for no-evidence and traditional summary judgment. Appellees asserted three grounds in their no-evidence motion. First, appellants had no evidence of causation on any of their claims. Second, appellants had no evidence

---

[1] Wood Floor Artisans is a general partnership. Appellees Victor Martinez-Medina and Amber Lee Martinez are alleged to be the general partners. We will refer to these appellees collectively as Wood Floor Artisans.

[2] Reference to "appellees" collectively herein, unless otherwise specified, shall refer to Lumber Liquidators, Inc., and Wood Floor Artisans, a general partnership composed of Victor Martinez-Medina, individually and Amber Lee Martinez, individually.

2

of any "false, misleading, or deceptive acts" or that appellees committed any unconscionable acts to support their DTPA claim. Third, appellants had no evidence that appellees committed any act or omission that involved an extreme degree of risk to support the gross negligence claim.

In their motion for traditional summary judgment, appellees argued that appellants' implied warranty claims should be dismissed because they waived all implied warranties. Appellees also argued that appellants' claims for property and economic damages should be dismissed because appellants agreed to limit such damages in the contract. Appellees further argued that because the implied warranties were disclaimed and the express warranty was honored, the trial court should also dismiss appellants' DTPA claims based on the warranty claims. Appellees also filed motions to exclude appellants' expert witnesses.

Appellants responded to the no-evidence portion of the motion and attached their experts' opinions and appellees' investigation reports as exhibits. Appellants relied on the expert opinions of Rick Jones and Paula Vance and the appellees' investigation reports to support causation. In their response to appellees' motion for traditional summary judgment, appellants argued that they never waived any implied warranty. Appellants also argued that appellees did not honor the express warranty and that the damages limitation was not binding.

The trial court granted appellees' motion to exclude Vance as an expert witness. The trial court also granted appellees' motions for summary judgment without stating the reasons therein. After appellees dismissed their crossclaims against one another, the trial court signed a final judgment. Three weeks after the final judgment was signed, the trial court signed an order overruling appellants' objections to appellees' summary judgment evidence. This appeal followed.

3

## I.     CAUSATION

Appellants argue that the trial court erred in granting appellees' no-evidence motion for summary judgment because the record "is replete with evidence contradicting [appellees'] no-evidence grounds." Appellees contend there is no evidence to support causation for appellants' claims because appellants' mold expert could not identify how appellees' conduct caused moisture to enter the home or mold to grow throughout the home. Appellees also argue that appellants' experts did not attempt to rule out alternate causes of the mold throughout the home.

### A.     General Legal Principles

We review de novo a trial court's order granting summary judgment. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). We take as true all evidence favorable to the non-movant and resolve any doubts in the non-movant's favor. *Id.* When the motion asserts no-evidence and traditional grounds, we review the no-evidence grounds first. *Id.* If the non-movant fails to produce more than a scintilla of evidence on the essential elements of a cause of action challenged in the no-evidence motion, then there is no need to analyze the grounds for traditional summary judgment. *Id.* at 680–81.

Proximate cause consists of (1) cause in fact, and (2) foreseeability. *Windrum v. Kareh*, 581 S.W.3d 761, 777 (Tex. 2019). "Cause in fact 'is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred.'" *Id.* (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)). The defendant's act or omission need not be the sole cause of an injury so long as it is a substantial factor in bringing about the injury. *Id.* An injury may have more than one proximate cause. *Id.* at 778. If there is evidence

of other plausible causes of the injury that could be negated, the plaintiff must provide evidence that excludes those plausible causes with reasonable certainty. *Id*. Where a plaintiff must adduce evidence of a "reasonable probability" that the defendants' negligence caused the plaintiff's injury, the evidence must show that it is more likely than not that the ultimate harm or condition resulted from such negligence. *Id*. At the summary judgment stage there would need to be more than a scintilla of evidence that the negligent act or omission, in this case the installation of the flooring, was a substantial factor in bringing about the harm, in this case the mold in the home, and without which the harm would not have occurred. *See id*. at 778–79; *see also Kelly v. Travelers Lloyds of Tex. Ins. Co.*, No. 14-05-00825-CV, 2007 WL 527911, at *4 (Tex. App.—Houston [14th Dist.] Feb. 22, 2007, no pet.) (mem. op.) ("To establish causation, the Kellys were required to prove (1) a named peril, for example, a plumbing leak, caused mold in their home, (2) that mold became airborne before the house was gutted and their personal property moved to storage, and (3) this same mold from the covered peril contaminated the personal property before it was moved to storage.").

## B.    Background

Regarding causation, appellees argued that all of appellants' claims should be dismissed because appellants "have failed to adduce any evidence in support of their basic theory regarding the cause of the mold." Appellees alleged that "because [appellants'] sole theory of causation is unsupported by competent evidence, each of [appellants'] claims, all of which rely on this theory, lack evidence of an essential element and should be dismissed."

Appellants responded to the no-evidence portion of the motion arguing that their position is that "elevated moisture levels were introduced into their home as a result of [appellees'] negligent installation of wood floors" and that the elevated

5

moisture levels caused mold that damaged appellants' home and health. "Because [appellees'] own investigation . . . confirmed causation, [appellants] need not provide expert testimony . . . to survive summary judgment." Appellants pointed to appellees' pre-lawsuit investigation that noted "there were no site issues present" which appellants alleged demonstrates that there were no other moisture sources that could have contributed to the growth of the mold in the home. Appellants relied on the expert opinions of Rick Jones and Paula Vance to support the causation element. Vance's opinions were excluded by the trial court, but Jones's opinions were not.

### C. Analysis

Appellants contend that their expert Rick Jones, as well as the investigations done by appellees provide sufficient evidence of causation to overcome appellees' no-evidence motion for summary judgment. We address, in turn, the evidence appellants produced.

### 1. Appellants' Expert Rick Jones

Jones inspected the home and flooring in May 2017, approximately two years after the installation. Jones observed the "flooring float" applied by the installers was "soft and powdery" and there were "open holes/bubbles through where they had used the float." Jones concluded that (1) the "bamboo flooring cupped and buckled consistent with excessive moisture from the concrete subfloors"; (2) the installers did not check the exterior of the home for gutters and other concerns according to the homeowner and, if competent and trained, they would have brought this to the homeowner's attention; (3) the installers did not perform ASTM[3] moisture testing as required per the flooring manufacturer and adhesive manufacturer; (4) the adhesive was not applied as required by the adhesive manufacturer to form a

---

[3] ASTM is an acronym for American Society for Testing and Materials.

moisture barrier as shown by Jones's observations and photos; (5) cupping within two weeks of installation is "consistent with excessive moisture being present at the time of the installation;" (6) a soft powdery float is consistent with the float being over watered; (7) thin film, bubble holes, and soft powdery consistency of the float are consistent with the float having been mixed with too much water; (8) excessive water in the float may have also contributed to the moisture causing the cupping and buckling; (9) if mixed properly the float will not scratch easily or be soft or powdery; and (10) based on "the evidence collected, the cause of the cupped and buckled flooring [was] the installers."

Jones's opinion is that the flooring failed due to excessive moisture and that such demonstrated failures were consistent with the presence of excessive moisture and an improperly placed moisture barrier. However, Jones says nothing as to whether this excessive moisture was a substantial factor in bringing about the harm complained of—the mold throughout the household. Jones says nothing about the mold in the home or whether the excessive moisture that existed at the time of the installation and when the moisture barrier was not properly applied, was a substantial factor in the alleged mold infestation in appellants' home. In other words, there is no evidence in Jones's opinion or report that the ultimate harm, the alleged mold in the home, was caused by the alleged negligent floor installation.

## 2. Appellees' Investigation—MAPEI

After issues with the flooring installation were reported, appellees conducted an investigation through two companies. On company identified as "MAPEI" investigated the cause of the flooring failure. After reviewing the information "submitted with the Site Report" the MAPEI report concludes the possible causes "can be attributed to one or more, but not limited to," the following:

7

Failure to properly test concrete slabs prior to installation . . . can produce moisture related issues;

Lack of required expansion space will result in . . . stress when planks shrink and swell, resulting in cupping and buckling . . .

Failure to properly . . . acclimate . . . will result in continued expansion or contraction of the flooring.

Nothing in this document discusses mold. Appellants argue that this report demonstrates the "cause of moisture in Appellants' home." However, this report merely states that a failure to test the concrete subfloors *can* produce moisture-related issues, not that it did in this case. At most this report states that reviewing the information submitted shows that there *could* be moisture-related issues causing the problems with the flooring but does not state that is the only possible cause for the reported issues with the flooring. Further, the report says nothing about the cause of the mold in the home. Therefore, the MAPEI report cannot raise a fact issue regarding the cause of the mold in the home.

### 3. Appellees' Investigation—Inspect Solutions

The inspector from Inspect Solutions came to appellants' home to look at the flooring installation within a few months after the installation of the bamboo flooring. The homeowner "arranged to have planks removed at three locations." The inspector found "cupping and loose/buckled planks" and "no expansion space at walls [i]n all rooms." The inspector took moisture readings in the rooms of the home where the flooring was cupping. His moisture readings were between average and high in these areas. The inspector concluded that the flooring was not properly acclimated or prepared prior to installation and there was not enough expansion space resulting in excess stress on the planks. The inspector also concluded that the failure "to properly test concrete slabs prior to installation of Bamboo flooring will result in flooring being installed into a wet environment which produces moisture

8

related issues as in this case." The inspector further concluded that "[a]ll of the issues above are either directly responsible or a contributing factor in the issues" of which appellants complain and the issues are "installation related."

This inspection report also did not include any findings regarding mold and only indicated that "moisture related problems or issues" were either directly responsible or a contributing factor of the flooring failure. The inspection report did not indicate that the inspector found any mold, but that the moisture readings were between average and high in the areas that the flooring was cupping.

### 4. Conclusion

While the three reports pointed to by appellants indicate the presence of elevated moisture in the home, there is no indication in any of these reports that this elevated moisture caused mold. None of the reports mentions or even contains the word mold, much less opines that the moisture present as a result of the flooring installation was a substantial factor in the mold alleged to have occurred throughout the home. There may be a fact question as to whether the elevated moisture levels "were introduced into the home as a result of" the installation, but appellants have failed to produce any evidence as to the cause of the mold in the home.

Because we have concluded that Jones's expert report and appellees' investigative reports are insufficient to raise a fact issue on causation of the mold in appellants' home, we turn to appellants other expert reports that were excluded by the trial court to determine whether such reports should have been considered and whether such reports raised a fact issue regarding causation of the mold in the home.

9

## II.    EXCLUDED EXPERT REPORTS

Appellants contend that the trial court erred in excluding the evidence from their expert Paula Vance.[4]  On appeal, appellants contend that "Vance's only real purpose in this case is to testify to the scope of mold inside the home" but also argue that "Vance's expertise and opinions concern the cause and scope of mold in Appellants' home."

### A.    General Legal Principles

We review an order excluding expert witness testimony under an abuse of discretion standard. *Helena Chem. Co. v. Williams*, 47 S.W.3d 486, 499 (Tex. 2001). The trial court abuses its discretion when its ruling is arbitrary, unreasonable, or made without reference to any guiding rules or legal principles. *Id*. If there is any legitimate basis for the trial court's ruling, we must uphold it. *Weingarten Realty Invs. v. Harris Cnty. Appraisal Dist.*, 93 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

All expert testimony must be relevant and reliable before admitted. *See* Tex. R. Evid. 702.  For expert testimony to be admissible the expert must be qualified and the testimony must be relevant and based on a reliable foundation. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). In ruling on reliability, the trial court is not to determine whether the expert's conclusions are correct; rather it determines whether the expert's analysis is reliable. *Id*. at 557. The trial court focuses on the reliability of the principles, research, and methods underlying the expert's conclusions, as well as on the expert's reasoning and methodology. *Id*. If the foundational data underlying an opinion is unreliable, then

---

[4] Appellants also submitted the report of Mike Travis to support their medical claims. Because Vance is the designated expert on mold, we address her report first.

an opinion drawn from that data is also unreliable. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997); *Weingarten*, 93 S.W.3d at 285. An expert must explain the basis of her statements to link her conclusions to the facts. *Windrum v. Kareh*, 581 S.W.3d 761, 768 (Tex. 2019).

## B.  Background

In the motion to exclude, appellees argued that Vance's opinions were "based on an underlying assumption about which Vance is not qualified to testify and is not otherwise supported by facts . . . on which Vance can reasonably rely." Appellees further argued that Vance's opinions were speculative because they failed to consider or exclude other potential sources of moisture in the home. Finally, appellees argued that Vance was not qualified to testify about the health effects on appellants from mold exposure.

In her report, Vance opined that "[w]et leveling material trapped during flooring installation by adhesive/sealant caused high levels of microbial contamination." Vance further opined that "[n]o bacterial growth in the original parquet floors further supports my opinion that the slab/foundation was dry and that there was no other source of water except the leveling material/compound that was not allowed to dry before it was improperly sealed." Vance also opined that "based on laboratory results and my knowledge/experience with fungal infections/exposure, as well as my limited visual and microbial assessments, it is my opinion that moisture trapped under the flooring when it was installed led to the elevated fungal and bacterial growth in the [appellants'] residence."[5]

---

[5] It is unclear whether the laboratory results referred to here are the results of the mold and fungal sampling (in the record) or possibly laboratory testing on the leveling material (not in the record).

11

## C.     Analysis

We do not determine whether Vance's conclusion, that the wet leveling material caused the high levels of microbial contamination, is correct. *See Robinson*, 923 S.W.2d at 557. Instead, we evaluate whether Vance's analysis is reliable. *See id*. In her report Vance concludes that the wet leveling material caused the mold and fungal contamination throughout the house. However, there is no indication of how Vance arrived at this conclusion. While Vance states it is based on her knowledge and experience, she does not indicate how her knowledge and experience led her to the conclusion. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 727–28 (Tex. 1998) (expert's opinions were conclusory when expert failed to show how his observations supported his conclusions and did not explain or exclude other possibilities). There is no indication of testing performed or other report that Vance relied on to arrive at the conclusion that the wet leveling material was responsible for all of the bacterial and fungal growth in the home. There is no indication that Vance, or any other qualified individual, inspected or reviewed the entirety of the home for other potential causes and ruled them out. Instead, Vance's report indicates the opposite, that upon beginning work and removing building materials there should be further inspection by a qualified individual for other sources of water damage or contamination. While there are lab results of samples collected by Vance from the home showing various levels of bacterial and fungal growth, there is no indication of any testing, inspection, or sampling to determine the source of the moisture which was crucial to the cultivation of the bacteria and fungi.

While Vance concluded that a moisture source was crucial for any bacteria or fungus growth to occur, the only moisture source identified was the wet leveling material without further support or investigation. Vance made no independent investigation as to whether the subfloor was the moisture source that led to the mold

and fungal growth,[6] but instead concluded that the "wet leveling material" upon which some of the flooring was placed was the moisture source without any further investigation or support for her conclusion. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) ("[I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence.").

Appellants argue that it is "undisputed that excessive moisture caused the mold" and that Jones and the other two investigations "evidence that the moisture was caused by appellees' negligence." Even taking as true the evidence that moisture was caused by the flooring installation, Vance has failed to demonstrate that it, and no other source, was the substantial factor in bringing about the harm (mold growth throughout the home) and without which the harm would not have occurred. *See Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010) ("[C]orrelation does not necessarily imply causation . . . . '[e]vidence of an event followed closely by manifestation of or treatment for conditions which did not appear before the event raises suspicion that the event at issue caused the conditions. But suspicion has not been and is not legally sufficient to support a finding of legal causation.'" (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007))); *see also Kelly*, 2007 WL 527911, at *7 ("Although the summary judgment evidence showed the Kellys' home may have had mold contamination, it did not show that their personal property was contaminated by mold due to a covered peril, i.e., a plumbing leak.").

Based on the above, we cannot conclude that the trial court abused its discretion in excluding Vance as an expert witness. As a result, appellants have failed to provide evidence on causation for their claims related to the mold in their

---

[6] Vance concluded, contrary to the Jones Report, that the slab was dry and was not a source of moisture.

home for both the personal injury and property-related claims.[7] Appellants also contend that the trial court erred in excluding the testimony of Mike Travis, an expert "who estimated the cost to remediate the mold" from appellants' home. However, because we conclude that appellants presented no evidence that the flooring installation caused the mold, we do not address whether the trial court abused its discretion in excluding Travis's opinion. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to the final disposition of the appeal.").[8]

Appellants' remaining claims are for damages unrelated to the mold in the home, namely for the flooring itself. We agree with appellants that they raised a fact issue regarding their claims for property damages unrelated to mold. The reports of Jones, MAPEI, and Inspect Solutions all placed the blame for the flooring failure on the installation. Jones provided observations detailing the evidence of how and why the flooring failed. The other two reports similarly conclude that there were many potential causes for the flooring failures that were all installation related. This is

---

[7] In their brief appellants raise three issues for this court's consideration. First, the trial court erred in dismissing appellants' property damage claims, consisting of four sub-issues. Second, the trial court erred in dismissing appellants' personal injury claims, consisting of two sub-issues. Third, the trial court erred in denying appellants' objections to Lumber Liquidators' summary judgment evidence. Because both the "Property Damage" claims and the "Personal Injury Damage" claims, except as discussed further in section III of this opinion, require appellants to prove that the flooring installation caused the mold that occurred in the home and we conclude that appellants have failed to produce any evidence tying the flooring installation to the mold, we overrule issue one in part, overrule issue two, and affirm the trial court's judgment on these claims.

[8] The dissent concludes that "Appellees' failure to comply with Texas Rule of Civil Procedure 166a means that no relevant burden ever shifted to Appellants." However, as noted above, appellees expressly alleged that appellees lacked evidence of causation for each of their claims. *See Hoover v. Larkin*, 196 S.W.3d 227, 231 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("Larkin moved for a no-evidence summary judgment on the basis that Hoover 'has no evidence of causation. Causation is an essential element of each of her purported causes of action.' Larkin thus properly pointed out the element of Hoover's claim for which he contends there is no evidence: causation. We conclude that Larkin sufficiently raised causation as a basis for summary judgment.").

sufficient to raise a fact issue on causation for the non-mold-related property damages and survive the no-evidence summary judgment. We therefore address appellants' next argument, whether the trial court erred in granting no-evidence summary judgment on the non-mold-related property damage claims.

## III.   DTPA

Appellants argue that the trial court erred in granting appellees' no-evidence motion on their DTPA claims because appellants cited evidence supporting each of the challenged elements.

### A.   General Legal Principles

To recover on a claim under the DTPA for failure to disclose material information or misrepresentations, a plaintiff must show that: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages. *See* Tex. Bus. & Com. Code § 17.50(a)(1). Section 17.46(b) defines certain acts or practices considered to be false, misleading, or deceptive. *See id.* § 17.46(b). Relevant to this lawsuit, appellants alleged that appellees violated the following provisions of section 17.46(b):

(1) passing off goods and services as those of another;

(2) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

(3) representing that goods and services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;

(4) representing that good or services are of a particular standard, quality, or grade, or that good are of a particular style or model, if they are of another;

(5) representing that an agreement confers or involves rights, remedies,

15

or obligations which it does not have or involve, or which are prohibited by law; and

(6) Failing to disclose information concerning good or service which was known at the time of the transaction with the intention to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

*See id.* "The determination of whether a breach of contract rises to the level of a misrepresentation sufficient to trigger the DTPA is a fact-driven inquiry." *Mays v. Pierce*, 203 S.W.3d 564, 574 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). "Whether the facts, once ascertained, constitute a DTPA misrepresentation is a question of law." *Id.* Where a party cannot show harm from reliance, but instead only harm from failure to perform, the party's action lies in contract. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14–15 (Tex. 1996) (per curiam) (no violation of DTPA when the statements of the defendant's representative did not cause harm but, instead, the failure to run the advertisement harmed the plaintiff); *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 387 (Tex. App.—Tyler 2009, pet. denied) ("When a representation by a defendant causes no harm itself, but instead the injury or damage was caused by the breach of contract, that injury is governed by contract law, not the DTPA."); *Mays*, 203 S.W.3d at 574 ("[The plaintiff] did not show she was harmed by [the defendant's] representations, but only showed harm caused by [the defendant's] failure to perform.").

To prevail on a claim for failure to disclose, the plaintiff must prove four elements: (1) a failure to disclose information concerning goods or services; (2) that was known at the time of the transaction; (3) if such failure was intended to induce the consumer into a transaction; and (4) that the consumer would not have entered had the information been disclosed. *See* Tex. Bus. & Com. Code § 17.46 (b)(24); *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 744 (Tex. App.—Fort Worth 2006, no pet.); *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 506

16

(Tex. App.—San Antonio 2004, pet. denied). "Mere nondisclosure of material information is not enough to establish an actionable DTPA claim." *Head*, 159 S.W.3d at 744. "Nondisclosure without evidence that a defendant had knowledge of the undisclosed information and intentionally withheld the information is insufficient to establish a violation of the DTPA." *Willowbrook Foods*, 147 S.W.3d at 507. Fraudulent intent may be established by either direct or circumstantial evidence. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). The subsequent failure to perform a promise is not alone dispositive but may be considered with other factors to establish intent. *Id*. at 435.

Generally, a misrepresentation of competence to provide services or a failure to disclose incompetence implicates a duty of ordinary care "and is not independently actionable as a fiduciary duty, DTPA, or other tort claim." *See Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 431–32 (Tex. App.—Austin 2009, no pet.); *see also Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 270, 274–75 (Tex. App.—Austin 2002, pet. denied) (DTPA claim based on law firm's "misrepresentations regarding its competency to adequately represent Ersek in the underlying medical malpractice action" constituted an improperly fractured negligence claim); *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (complaint that lawyer misrepresented legal services would be of competent quality when they were not constituted a negligence claim and not a claim for breach of fiduciary duty, DTPA violations, fraud, or breach of duty of good faith and fair dealing). This is because the complaint goes to the adequacy of the services received as opposed to a misrepresentation of the services themselves. *See Beck*, 97 S.W.3d at 432.

17

**B.    Background**

In their no-evidence motion for summary judgment, appellees argued that appellants failed to adduce evidence: (1) of any false, misleading or deceptive act under section 17.46(b), (2) that appellees committed any unconscionable acts as defined in section 17.45(5); (3) that appellants relied on any of these statements or acts; and (4) that such statements and reliance were the producing cause of appellants' injuries.

In their response, appellants contended that the "evidence demonstrates [appellees] committed false, misleading or deceptive acts before and after [appellants] purchased the wood floor product and installation services." Appellants argued that the "record makes clear that [appellees] had no intention or was incapable of performing its services" in a competent, professional manner and that "implicit in the relationship was [appellees'] representation that it would exercise care and prudence installing the floors." Appellants contended that this was evidenced by the fact that the installers did not take moisture readings, did not properly apply adhesive necessary to form a moisture barrier, and failed to provide for expansion space. Appellants contended that such "blatant failures" were evidence of false, misleading, or deceptive intent on the part of appellees. Appellants also contended that "had they known that [appellees] had no intention or ability to properly install their floors" appellants would not have hired appellees. Finally, appellants argued that appellees' incompetence evidenced their "knowing inability to or intent not to properly install" the flooring.

**C.    Analysis**

Appellees argue that the only evidence appellants raised was "merely an allegation that [appellee Lumber Liquidators] breached its contract for installation of the floor" which is insufficient to raise a genuine issue of fact to show a false,

misleading, or deceptive act in violation of the DTPA.  *See Crawford*, 917 S.W.2d at 14.

The alleged misrepresentation regarding appellees' competence does not implicate an actionable false, deceptive, or misleading act under the DTPA but instead concerns appellees' duty of care to appellants. *See Beck*, 284 S.W.3d at 431–32; *Ersek*, 69 S.W.3d at 270, 274–75.  There is no evidence that appellees misrepresented the character of the services that appellants would receive under the contract.  However, even if we agreed that the alleged nondisclosure was actionable under the DTPA, appellants presented no evidence that Lumber Liquidators had any knowledge at the time of the agreement of the alleged undisclosed material fact— that appellees Wood Floor Artisans were not capable of installing the flooring properly.  Because appellants failed to produce more than a scintilla of evidence on the essential elements of this cause of action, no-evidence summary judgment was proper. *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680–81 (Tex. 2017); *see also Head*, 159 S.W.3d at 744–45 (affirming summary judgment because the plaintiff only alleged failure to disclose information but failed to provide evidence that the defendants withheld information with the intent to induce contract). Finally, even taking appellants' evidence as true and resolving all doubts regarding the evidence in their favor, the representations that appellants rely on to form the basis of their DTPA claims are nothing more than representations that appellees would perform under the contract.  *Crawford*, 917 S.W.2d at 14–15.  Like in *Crawford*, the statements themselves did not cause appellants' harm.  *See id*.

Regarding their other DTPA laundry list claims, appellants provided no response or evidence that any false, misleading, or deceptive act under section 17.46(b) occurred.  As a result, no-evidence summary judgment on these claims was proper.

## IV.   GROSS NEGLIGENCE

Appellants next argue that they provided evidence that appellees acted with an extreme degree of risk of harm to appellants and had subjective knowledge of that risk.

### A.   General Legal Principles

Gross negligence means an act or omission:

(A) which when viewed objectively from the standpoint of the actor at the time of occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11).  An extreme degree of risk is not "a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001).  In examining proof of the subjective component of gross negligence, courts focus on the actor's state of mind, examining whether the actor knew about the peril caused by the actor's conduct but acted in a way that demonstrates the actor did not care about the consequences to others. *Reeder v. Wood County Energy, LLC*, 395 S.W.3d 789, 796 (Tex. 2012).  "An act or omission that is merely ineffective, thoughtless, careless, or not inordinately risky is not grossly negligent." *Id.* at 797.  Only if the actor's conduct is unjustifiable and likely to cause serious harm can it be grossly negligent. *Id.*

### B.   Background

Appellants alleged that appellees were grossly negligent in installing the flooring and that appellants had "actual and/or constructive knowledge of the

hazards of the improper installation of flooring, including mold growth." Appellees moved for no-evidence summary judgment on this claim arguing that there is "no evidence that [appellants] committed any act or omission that involved an extreme degree of risk." Appellees also alleged that there was no evidence of appellant's "subjective knowledge of any such known risk."

In their response to the no-evidence summary judgment appellants argued that appellees acted with an extreme degree of risk, considering the probability and magnitude of harm to appellants because appellees were aware that moisture problems could occur from improperly installed floors. Appellants cited to two pages of the Lumber Liquidators' corporate representative deposition transcript wherein the corporate representative testified, "I don't think that they could officially determine anything except for moisture was causing the floor to . . . cup." The corporate representative also testified that the problems with the wood floors were caused by moisture. Appellants argued that appellees were further aware that "high moisture levels could result in mold contamination" citing to a document indicating that "buckling or warping is almost always as a result of moisture and/or water damage" and that "[i]n virtually all situations if there is a mold issue, there is an excessive moisture issue." Appellants argued that this demonstrated that when appellees "installed the floors in [a] grossly incompetent manner" appellees were "acting in a way causing an extreme degree of risk to" appellants. Appellants further argued that in failing to disclose the results of appellees' investigations, appellees were further acting with an "extreme degree of risk" to appellants.

## C.    Analysis

To the extent that appellants' claim for gross negligence is related to the flooring damage itself, as opposed to damages related to mold, we conclude that appellants have failed to adduce any evidence of appellees' subjective knowledge of

21

any risk. Appellants pointed to the corporate representative testimony that the cause of the flooring failure was moisture and to a document indicating that if there is mold there is also an "excessive moisture issue." This evidence does not demonstrate that appellees acted with an extreme degree of risk of harm to appellants and had subjective knowledge of such risk. At the most it shows that appellees were aware there was a moisture issue after the flooring was installed and after their investigation was complete.

Concluding that no-evidence summary judgment was appropriate for all of appellants' mold-related claims and appellants' DTPA and gross negligence property damage claims, we now turn to the traditional summary judgment grounds on those remaining claims related to property damage.

### TRADITIONAL MOTION FOR SUMMARY JUDGMENT

Appellants argue that the trial court erred in granting traditional summary judgment on their claims for breach of implied warranty, breach of contract, negligence, DTPA, and gross negligence claims. Appellants argue that the invoices in which appellants purportedly agreed to waive and limit their ability to seek redress against appellees were unsigned and therefore ineffective to bind appellants to their terms. As a result, the unsigned invoices "provided no basis for enforcing liability waiving or limiting language in unilateral form documents that are not signed by either party." Appellants argue that because appellees provided no evidence that appellants ever received the invoice and warranty for the installation services, its summary judgment seeking to dismiss or limit appellants' claims from the installation should have been denied.

22

# I. GENERAL LEGAL PRINCIPLES

We review a trial court's order granting summary judgment de novo, taking all evidence favorable to the non-movant as true, indulging every reasonable inference, and resolving any doubts in the non-movant's favor. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). To prevail on a traditional summary judgment motion the movant must demonstrate that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Id*. at 681.

"The Texas Business and Commerce Code provides that to exclude or modify the implied warranty of merchantability or any part of it in either a sale or lease of good, the language must mention merchantability, and if in writing, must be conspicuous." *LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 131–32 (Tex. App.—Amarillo 1997, writ denied); *see* Tex. Bus. & Com. Code § 2.316(b). Whether a particular disclaimer is conspicuous is a question of law. *Cate v. Dover Corp.*, 790 S.W.2d 559, 560 (Tex. 1990). "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Tex. Bus. & Com. Code § 1.201(10). A disclaimer must be disclosed to the buyer before the contract of sale has been completed, unless the buyer later agrees to the disclaimer as a modification of the contract. *Dewayne Rogers Logging., Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 390 (Tex. App.—Tyler 2009, pet. denied); *see also Womco, Inc. v. Navistar Int'l Corp.*, 84 S.W.3d 272, 279 (Tex. App.—Tyler 2002, no pet.).

# II. BACKGROUND

In their motion for traditional summary judgment appellees argued that their implied warranty claims should be dismissed because they waived all implied warranties in an invoice for the flooring sale and in an installation agreement

23

between the parties. Appellees argued that appellants waived any implied warranty of merchantability or fitness for a particular purpose because of the disclaimers in the invoice and agreement. The invoice, dated March 2015, is for the purchase of the flooring from appellee Lumber Liquidators (Flooring Material Invoice). The agreement is entitled "Home Improvement Agreement" and contains the terms for the installation of the flooring in appellants' home (Home Improvement Agreement). Appellees also argued that appellants' express warranty claims should be dismissed because the express warranty, under either the Flooring Material Invoice or the Home Improvement Agreement, was honored because the sole remedy provided was repair. Appellees further argued that because the implied warranties were disclaimed and the express warranty was honored, the trial court should also dismiss appellants' DTPA claims based on the warranty claims. Finally, appellees argued that appellants' claims for property and economic damages should be dismissed because appellants agreed to limit such damages in the Home Improvement Agreement. Citing solely to the Home Improvement Agreement, appellees urged the trial court to dismiss such claims because appellants waived their rights in the Home Improvement Agreement.[9]

In their response to appellees' motion for summary judgment appellants argued that they never waived any implied warranty because they never signed the two documents containing the waivers. Appellants argued that the waivers did not meet the prerequisites for waiving an implied warranty. Appellants also argued that appellees did not honor the express warranty and that such express warranty was also contained in the unsigned, and therefore non-binding, invoices that purported to limit the implied warranty claims.

---

[9] Appellees did not reference or argue that the Flooring Material Invoice contained a similar limitation.

Attached as an exhibit to the summary judgment response was the deposition transcript of appellant John Wu. Wu testified that "he never saw . . . the Home Improvement Agreement, until after [appellees] installed his floor and mold was discovered." Appellees pointed to no evidence in their summary judgment motion that appellants had received or reviewed the Home Improvement Agreement before the installation of the flooring. However, Wu indicated in his deposition that he had received the Flooring Material Invoice at the time of purchase but had only "glanced" at it at that time.

The Flooring Material Invoice provides that:

Products may or may not have a limited warranty as specified in information with the product or available as set forth below. ALL OTHER WARRANTIES ARE DISCLAIMED, EXCEPT TO THE EXTENT THAT SUCH WARRANTIES CANNOT BE VALIDLY DISCLAIMED UNDER APPLICABLE LAW. Lumber Liquidators may, in its discretion, fully and completely resolve a claim for a manufacturer's defect by providing a store credit. Except to the extent specifically prohibited by law, Lumber Liquidators shall not be responsible or liable, and Buyer waives any claim, for indirect, incidental or consequential damages arising from or related to Lumber Liquidators sale of any products. Under no circumstances shall any liability of Lumber Liquidators arising out of or relating to this transaction exceed the total cost of the products included in this invoice and paid for by Buyer.

## III.  ANALYSIS

Appellants argue that they never signed the Flooring Material Invoice or the Home Improvement Agreement and, as a result, the limitations and disclaimers contained therein are not binding. However, all that is required is that the disclaimer be disclosed to the buyer before the contract of sale has been completed, unless the buyer agrees later to modify the contract. *See Dewayne Rogers Logging*, 299 S.W.3d

25

at 390; *see also Womco, Inc.*, 84 S.W.3d at 279 (holding a disclaimer must be communicated to the buyer before the contract has been completed).

Here, there was evidence that appellants received the Flooring Material Invoice prior to the sale of the flooring material and that Wu had "glanced" at it. Wu did not contend in response that he did not receive the Flooring Material Invoice before completion of the sale. However, there is no evidence in the record to show that appellants were provided with the Home Improvement Agreement before the performance or payment for services. In their summary judgment response, appellants contended and Wu testified that appellants did not receive the Home Improvement Agreement and, therefore, raised a fact issue as to whether the Home Improvement Agreement and its disclaimers and limitations effectively bound them. *See Womco, Inc.*, 84 S.W.3d at 280 (holding there was a fact issue precluding summary judgment when there was no evidence that the disclaimer in the contract was disclosed or communicated prior to the completion of the contract for sale).

Appellants further contend that the disclaimer of implied warranties in the Flooring Material Invoice is insufficient as a matter of law to disclaim the implied warranties of merchantability and fitness for a particular purpose. There is no mention of merchantability in the Flooring Material Invoice. *See* Tex. Bus. & Com. Code §§ 2.316(b), 2A.214(b) (exclusion must mention "merchantability" and be conspicuous). Therefore, the disclaimer is ineffective to waive the warranty of merchantability. *See id*. With regard to the warranty for fitness for a particular purpose, the limited warranty provision within the Flooring Material Invoice contains all capital letters in contrast to the other provisions within the invoice and is conspicuous. *See id*. at § 2.316(b); *see also Materials Mkg. Corp. v. Spencer*, 40 S.W.3d 172, 175 (Tex. App.—Texarkana 2001, no pet.) ("A printed heading in

26

capitals is conspicuous."); *see also Womco, Inc.*, 84 S.W.3d at 279. Therefore, the disclaimer is effective for the implied warranty of fitness for particular purpose.[10]

Appellees made no argument in their motion for summary judgment that that Flooring Material Invoice's limitation of damages should bar or limit appellants claims in this case. Instead, appellees only argued that the Home Improvement Agreement limited appellants ability to obtain certain damages. Because we have concluded there is a fact issue on whether appellants received the Home Improvement Agreement before the completion of the sale or installation of the flooring, summary judgment on this ground was improper.

Lastly, appellees argued in their summary judgment motion that because summary judgment was proper on all of appellants' warranty claims that summary judgment on appellants' DTPA claims based on those warranty claims was also proper. *See Elliott v. Kraft Foods N. Am., Inc.*, 118 S.W.3d 50, 56–57 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("DTPA does not create warranties; rather they must be established independently of the act."). Because we have concluded that there is a fact issue on appellants' warranty claims, we conclude that summary judgment on appellants' DTPA claims on this ground was also improper.

We overrule appellants' first issue in part, concluding that appellants waived the implied warranty of fitness and summary judgment on any such claim was proper. We sustain appellants' first issue in part, concluding there is a fact issue on whether the disclaimers and damage limitations in the Home Improvement Agreement are binding on appellants and, therefore, summary judgment on these claims was improper. We further sustain appellants' first issue in part, concluding

---

[10] We disagree with the dissent that our conclusion is "facially erroneous" because appellants alleged that they did not receive or execute the Home Improvement Agreement. Our analysis of waiver of this implied warranty is solely based on the Flooring Material Invoice that appellant Wu acknowledges receiving and "glancing" at.

that appellees' summary judgment motion did not address appellants' claim for breach of the "implied warranty of good and workmanlike manner claim" and instead only addressed the implied warranties of merchantability and fitness. Therefore, summary judgment on that claim was also improper. Further, because we conclude that summary judgment on these warranty claims was improper, summary judgment on appellants' DTPA claims based on these warranties was also improper. We overrule appellants' second issue, partly overrule appellants' first issue, and partly sustain their first issue.

## ADMISSION OF EVIDENCE

In their third issue appellants argue that the trial court abused its discretion in overruling appellants' objections to appellees' summary judgment evidence. Appellants argue that the trial court impermissibly relied upon a business records affidavit to overcome appellants' hearsay objections to certain exhibits.

We review evidentiary rulings for an abuse of discretion. *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). "We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment." *Id.*; *see also* Tex. R. App. P. 44.1.

In their response to appellees' motion for summary judgment, appellants objected to appellees' summary judgment exhibits, A, E, F, J, L, M, Q, R, and T "on the basis that they are inadmissible on authenticity and hearsay grounds." On appeal, similarly appellants argue that these exhibits are "hearsay" and inadmissible. In their reply to the motions for summary judgment, appellees attached a business records affidavit and argued that some of the exhibits are not hearsay but were presented to show the terms of the parties' contracts. *See Thomas C. Cook, Inc. v. Rowhanian*, 774 S.W.2d 679 (Tex. App.—El Paso 1989, writ denied); *see also Am. Maint. & Rentals, Inc. v. Estrada*, 896 S.W.2d 212, 223 (Tex. App.—Houston [1st Dist.] 1995,

28

no writ) ("An example of a verbal act is a contract, a statement to which the law attaches duties and liability based on the statement's content. Thus, the contractual terms themselves . . . may be admissible."). The business record affidavit was filed more than seven months before the trial court considered the summary judgment motions. *See* Tex. R. Civ. P. 166a(c) ("[A]ny supporting affidavits shall be filed and served at least twenty-one days before the time specified for the hearing.").

Above we concluded that the trial court properly granted summary judgment on appellants' breach of the implied warranty of fitness claims because they were properly disclaimed. This conclusion rests on Exhibit E and whether the disclaimer contained therein is conspicuous. Because appellees supported Exhibit E with a business records affidavit and because it was offered as an "operative fact" the trial court did not abuse its discretion in admitting this exhibit. *See Rowhanian*, 774 S.W.2d at 685.

Even if we concluded that the trial court abused its discretion in admitting the remaining exhibits, appellants do not make any argument for how the admission of these exhibits probably resulted in an improper judgment other than to state that appellees referred to these exhibits "as basis for its summary judgment." Without reference to these exhibits, we have determined that the trial court properly granted no-evidence summary judgment regarding the mold-related damages, the DTPA claims, and gross negligence claims. These exhibits have no bearing on the no-evidence portion of the motion and could not have caused the rendition of an improper judgment. With regard to the remaining traditional summary judgment grounds, we have concluded that the trial court improperly granted traditional summary judgment. Thus, we need not analyze whether the admission of the remaining exhibits was an abuse of discretion because it would not change the disposition on appeal. Tex. R. App. P. 47.1.

29

**CONCLUSION**

Appellants raised a fact issue on causation of the flooring failure but failed to raise a fact issue on causation of the mold.  We affirm summary judgment on all of appellants' mold claims, and reverse and remand this cause to the trial court for further proceedings on appellants' claims seeking damages for the flooring and unrelated to mold.


/s/    Ken Wise
       Justice


Panel consists of Justices Wise, Spain, and Hassan. (Hassan, J. dissenting).